**Kenneth EDGAR, d/b/a Defense Surplus Sales Expeditors, Appellant,**

v.

**William J. SLAUGHTER, d/b/a Champlin Food & Fuel Center, etc., Appellees.**

No. 76–1602.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 14, 1977.

Decided Feb. 8, 1977.

Stephen P. Seigel, Springfield, Mo., for appellant.

David W. Ansley, Springfield, Mo., for appellee.

* The Honorable H. Kenneth Wangelin, United States District Judge for the Eastern and Western Districts of Missouri, sitting by designation.

1. The interrogatories propounded by the defendants seek answers encompassing such extraneous facts as profit and loss, operating expenses of plaintiff's company dating back five years, as well as non-germane particulars dealing with the specifics of exclusionary clauses

Before LAY and ROSS, Circuit Judges, and WANGELIN,* District Judge.

LAY, Circuit Judge.

Plaintiff Kenneth Edgar appeals the dismissal by the district court of his complaint and the entry of a default judgment on defendants' counterclaim pursuant to Fed. R.Civ.P. 37(b)(2) for failure to comply with an order requiring answers to certain interrogatories. We find the dismissal and the entry of the default judgment to be erroneous and reverse.

This diversity suit involves a claim for loss of use and property damages arising from the alleged negligent conduct of the defendant in allowing plaintiff's 1966 Mack tractor-trailer unit to go over an embankment. The defendants counterclaimed for the damage to its property caused by the tractor-trailer unit.

On October 28, 1975, the defendants filed lengthy and detailed interrogatories. Plaintiff objected to certain of the interrogatories and failed to respond to the others. On February 18, 1976, the district court ordered plaintiff to answer all interrogatories and sustained the defendants' motion to compel answers within 15 days.

■ According to the court's earlier pretrial order, discovery was to expire February 23, 1976. Although the record is not clear, the attorneys for the respective parties conferred and plaintiff's attorney allegedly informed defendants' counsel that the detailed answers to the interrogatories concerning "loss of profits" and, etc., had been requested from his client who was located in the State of Pennsylvania and that a search for the information was under way.[1] Plaintiff's attorney asserts that defendants' counsel did not object to a delay and agreed to seek an extension of time to

within plaintiff's insurance coverage. Although interrogatories are given wide latitude as to relevancy, such overall abuse of discovery procedures deserve judicial condemnation. See McMillan, *Discovery: A Not So Magnificent Obsession,* 3 *Litigation* 5 (Fall 1976).

complete discovery. Regardless of this contention the record does show that on March 9, 1976, the court on defendants' motion extended the period for discovery to April 23, 1976.

Subsequent to March 9 counsel again conferred and plaintiff's attorney allegedly advised defendants' attorney that he had received an incomplete set of answers to the interrogatories from the Pennsylvania lawyers and that more time would be needed to obtain the detailed information. (His subsequent statement to the court reveals that the alleged reason for the delay was because of a fire in Pennsylvania which burned the company records.) According to plaintiff's attorney, defendants' attorney requested that he be sent the answers received to date and stated that he would once again seek an extension of time to complete discovery.[2]

On April 16, defendants' counsel moved for a 90-day extension to complete discovery and, alternatively, moved to dismiss plaintiff's claim and for judgment on the counterclaim, because plaintiff had failed to answer the interrogatories within the 15-day deadline. On April 30, 1976, plaintiff's attorney mailed the incomplete answers to the interrogatories to defendants' attorney. However, on April 28, 1976, the court ordered, without a hearing, that plaintiff's complaint be dismissed and judgment be entered on the counterclaim. Plaintiff then moved to set aside the default judgment and filed suggestions with the court setting forth the reason for the delay. The defendants filed countersuggestions, agreeing substantially with plaintiff's version, but stating that they were never informed of the fire in Pennsylvania until after the sanctions were imposed. The defendants moved

for sanctions because plaintiff had been "dilatory" in complying with the court order.

Fed.R.Civ.P. 37(a) and (b) provide broad discretion to the trial court to impose sanctions for failure to comply with the court's order. Yet, as has been often noted, the rule requires the court to enter "such orders in regard to the failure as are just." The various sanctions under Rule 37(b)(2)(A–E) allow the court, *inter alia*, to treat such failure as contempt of court, to require the payment of reasonable attorney fees, to stay proceedings until the order is obeyed, to require admissions, to allow designated evidence without further dispute, to strike pleadings, and to enter a dismissal or judgment by default. It can readily be perceived that the latter sanction is most severe and harsh. The Supreme Court and this court have strongly indicated that the harsh remedies of dismissal and default should only be used when the "failure to comply has been due to . . . willfulness, bad faith, or any fault of petitioner." *Societe Internationale v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958); and *General Dynamics Corp. v. Selb Mfg. Co.,* 481 F.2d 1204, 1211 (8th Cir. 1973). As Judge Van Oosterhout stated, "[t]here is a strong policy favoring a trial on the merits and against depriving a party of his day in court." *Fox v. Studebaker-Worthington, Inc.,* 516 F.2d 989, 996 (8th Cir. 1975).

These cases reflect the proper balance between the conflicting policies of the need to prevent delays and the sound public policy of deciding cases on their merits. *McCargo v. Hedrick,* 545 F.2d 393, 396 (4th Cir. 1976);[3] and *Reizakis v. Loy,* 490 F.2d 1132, 1135 (4th Cir. 1974). This balance recognizes that a trial judge should have

---

**2.** The court is fully aware that such an extension was deemed necessary by defense counsel since plaintiff was delayed in providing him answers. No contention is made that such an extension was related to the time plaintiff could complete his answers.

**3.** In *McCargo v. Hedrick,* 545 F.2d 393 (4th Cir. 1976), the Fourth Circuit in reversing a dismissal of plaintiff's complaint for failure to comply with a district court's pretrial order noted that

because dismissal is such a harsh sanction it should be resorted to only in extreme cases. The Fourth Circuit also held that Local Rule 2.08, which governs pretrial procedure, placed such a burden upon litigants and their trial counsel that the procedure appeared "to have become an end in itself." *Id.* at 396. In striking the rule, the court noted that it had broken the promise of Fed.R.Civ.P. 16. *Id.* at 397.

 

wide latitude in controlling pretrial discovery orders and should seek compliance with his orders. But this balance also recognizes that in our system of justice the opportunity to be heard is a litigant's most precious right and should be sparingly denied. Prior to dismissal or entering a default judgment, fundamental fairness should require a district court to enter an order to show cause and hold a hearing, if deemed necessary, to determine whether assessment of costs and attorney fees or even an attorney's citation for contempt would be a more just and effective sanction. Dismissal and entry of a default judgment should be the rare judicial act. When noncompliance is the result of dilatory conduct by counsel, the courts should investigate the attorney's responsibility as an officer of the court and, if appropriate, impose on the client sanctions less extreme than dismissal or default, unless it is shown that the client is deliberately or in bad faith failing to comply with the court's order. On remand the district court is free to investigate the imposition, if deemed necessary, of less extreme sanctions against plaintiff or his attorney.[4]

In the instant case we find that it was an abuse of discretion to dismiss plaintiff's complaint and grant defendants a default judgment on their counterclaim. The record does not show that the plaintiff willfully or in bad faith failed to timely answer the interrogatories. Furthermore the defendants have never indicated how the plaintiff's delay in answering the interrogatories has prejudiced the preparation of their counterclaim for trial. *See Fox v. Studebaker-Worthington, Inc., supra,* 516 F.2d at 996.

The judgment is reversed, the plaintiff's complaint is reinstated, and the entry of the default judgment on defendants' counterclaim is vacated.

---

4. We do not suggest that sanctions against plaintiff or his attorney would be appropriate. In fact, the record indicates the existence of mitigating factors. It appears that plaintiff's attorney had some kind of understanding with defendants' attorney concerning the delay and although slow in response he did make available the information he received. It also appears that defendants' attorney did not object to this procedure until the motion for sanctions was filed. On the other hand, we acknowledge that plaintiff's attorney owed a greater responsibility to the court and was dilatory in failing to seek extensions of time in order to answer the interrogatories.